

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-2094-UNGARO-BENAGES
Magistrate Bandstra

MARIA ELSA MIRANDA ESPEJEL,
Individually and as Personal
Representative of the Estate
of Jose Rosell Martinez,

    Plaintiff,

-vs-

TACA CORP.; AVIATECA, S.A.;
AMERICAN CENTRAL CORPORATION;
C.I.T LEASING CORPORATION, and
INTERNATIONAL LEASE FINANCE
CORPORATION,

    Defendants.

**AMENDED COMPLAINT**

---

Plaintiff, MARIA ELSA MIRANDA ESPEJEL, Individually and as Personal Representative of the Estate of Jose Rosell Martinez, sues the Defendants, TACA CORP.; C.I.T. LEASING CORPORATION (CIT); INTERNATIONAL LEASE FINANCE CORPORATION (ILFC); AVIATECA, S.A., (AVIATECA); and AMERICAN CENTRAL CORPORATION (ACC) and alleges:

### ALLEGATIONS AS TO ALL COUNTS

1.   This is a wrongful death action brought pursuant to the Warsaw Convention (codified at 49 U.S.A. § 1502, *et seq*.), the Florida Wrongful Death Act, and other statutes or laws this Court

finds applicable.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Warsaw Convention, a treaty of the United States. The Court has supplemental jurisdiction of Plaintiff's other claims pursuant to 28 U.S.C. § 1367.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), 49 U.S.C. § 1502 *et seq.*, and Article 28 of the Warsaw Convention.

4. This action arises from the crash of a Boeing 737-200 aircraft, Federal Aviation Administration Registration No. N125GU (the aircraft) on August 9, 1995 in El Salvador, Central America.

5. The aircraft crash caused the death of Jose Rosell Martinez.

6. At all times material, Plaintiff, MARIA ELSA MIRANDA ESPEJEL, was the duly appointed the Personal Representative of the Estate of Jose Rosell Martinez, deceased.

7. At all times material, Plaintiff MARIA ELSA MIRANDA ESPEJEL, was a resident of Costa Rica. Jose Rosell Martinez, deceased, was a resident of Costa Rica.

8. Plaintiff, MARIA ELSA MIRANDA ESPEJEL, brings this action in her representative capacity on behalf of the Estate of Jose Rosell Martinez, deceased, and on behalf herself

individually as survivor.

9. Defendant, CIT, is a Delaware corporation doing business and authorized to do business in Dade County, Florida. At all times material, CIT owned the aircraft through a predecessor in interest, and leased it in the United States to AVIATECA. The lease was signed for AVIATECA, "by and through Its United States branch" by Orlando Hotusing, Aviateca's Regional and Administrative Manager U.S.A. Subsequent lease amendments and agreements were signed in Miami, Florida by AVIATECA's attorney, a resident of Miami, Florida.

10. Defendant ILFC is a foreign corporation doing business in Dade County, Florida which leased the aircraft to Defendants AVIATECA/TACA. Said lease was assigned to CIT.

11. Defendant ACC is a Florida corporation with its principal place of business in Dade County, Florida, and it is a wholly owned and operated subsidiary of TACA.

12. At all times material, Defendant TACA was a foreign corporation doing business in Miami, Dade County, Florida, as well as in several other states, which has its ordinary residence and/or principal place of business in the United States at 5885 Northwest 18th Street, Building 2200, Miami, Florida 33159; and at the Miami International Airport.

13. At all times material, Defendant AVIATECA was a foreign

corporation doing business in Miami, Dade County, Florida, and in several other states; which has its ordinary residence and/or principal place of business in the United States at 5885 Northwest 18th Street, Building 2200, Miami, Florida 33159; and at the Miami International Airport.

14. At all times material, Defendant TACA was the parent corporation which operated its wholly owned subsidiary corporations AVIATECA and ACC as one airline company, referred to hereinafter as the "ACC Joint Venture." TACA controlled these subsidiaries without any respect for customary and required corporate formalities. As such, TACA operated these subsidiaries as the "alter egos" of one another and as the alter ego of TACA; and/or as a joint venture with TACA as the controlling principal corporation of these subsidiaries.

15. At all times material, Defendant TACA and its wholly owned and controlled subsidiaries AVIATECA and ACC were engaged in a joint venture and joint enterprise for the purpose of running an airline in the United States of America in public transportation pursuant to the Federal Aviation Regulations. The joint enterprises of TACA and its wholly owned and operated subsidiaries is contractually governed by Florida law. This joint venture will hereinafter be referred to as the "ACC Joint Venture."

16. The ACC Joint Venture is established by the following facts:

   a. AVIATECA claims to have "no employees" in the United States, yet operates a substantial business at Miami International Airport, both for cargo and passengers. The "Aviateca" name is prominently displayed in numerous places in the airport, including signs at the departure level, the arrival level and the ticket counter.

   b. All of the "Aviateca" employees working at Miami International Airport are apparently employed by ACC, or another Florida corporation that subcontracts with ACC.

   c. All of the substantial maintenance performed on the "Aviateca" aircraft in Florida is contracted for and paid for by ACC.

   d. All maintenance on "Aviateca" aircraft in Florida and elsewhere in the United States is subject to and must be conducted in accordance with the Federal Aviation Regulations.

   e. All maintenance on "Aviateca" aircraft is subject to the supervision and approval of the Federal Aviation Administration, without which the aircraft cannot be operated in the United States or Florida.

   f. All aircraft, including the subject aircraft, operated by TACA, AVIATECA and ACC or the ACC Joint Venture are

registered in the United States of America.

  g. All of AVIATECA's sales, marketing and ticketing in Florida and the United States is handled by TACA and ACC; these operations are substantial in scope and involve a marketing approach directed almost exclusively to United States citizens and Florida citizens in particular.

  h. ACC holds itself out as "ACC Airlines," blurring any distinction between it and TACA/AVIATECA as a separate entity.

  i. The corporate setup of TACA, AVIATECA and ACC is designed to allow TACA and AVIATECA to conduct substantial operations in the United States of America and to reap the financial benefits of such operation, without the obligations and duties that otherwise attach to a commercial airline doing business in the United States of America. Including, as AVIATECA claims herein, that it employs no one in Florida and that its principal place of business is in Guatemala, while at the same time maintaining a substantial, even predominant and principal, presence in Florida.

  j. The combined operations of the TACA, AVIATECA and ACC, including passenger and cargo revenues; and the marketing and sales effort generated through the Miami Headquarters Office clearly establish this "ACC Joint Venture's" principal place of

business is Miami, Florida and the United States of America.

    k.    TACA and its subsidiaries, including AVIATECA, lease all aircraft through negotiations by American counsel in Miami, Florida. The lease agreements for the aircraft are signed on TACA/AVIATECA's behalf by that same lawyer in Miami, Florida.

17. TACA, AVIATECA and ACC and/or the "ACC Joint Venture," individually or as a joint venture, operated scheduled aircraft, for hire, on international flights.

18. The "ACC Joint Venture" was a common carrier engaged in the business of transporting passengers for hire on regularly scheduled flights on aircraft owned, leased, operated, managed and maintained by their agents and/or employees, acting within the course and scope of their employment.

19. On August 9, 1995, the Defendants individually and/or the "ACC Joint Venture" were responsible for the operation of the subject aircraft on a scheduled flight designated Flight 901.

20. Flight 901 departed Miami, Florida, enroute to San Jose Costa Rica, with stops at Guatemala, San Salvador and Nicaragua.

21. Jose Rosell Martinez, deceased, was a ticketed passenger and lawfully on board the aircraft.

22. The United States of America is a contracting party to the Warsaw Convention.

23. The Plaintiff has complied with all conditions

precedent to this action.

**COUNT I**

**NEGLIGENCE AGAINST TACA, ITS SUBSIDIARIES, AVIATECA, ACC AND THE ACC JOINT VENTURE**

Plaintiff adopts and realleges every allegation contained in paragraphs 1 through 23 and further alleges:

24. At all times material hereto, TACA, AVIATECA and ACC and/or the "ACC Joint Venture" were responsible for the operation, inspection and maintenance of the subject aircraft and owed the highest duty of care to the Plaintiff and Jose Rosell Martinez, deceased.

25. TACA, AVIATECA and ACC and/or the "ACC Joint Venture," by and through their agents, employees and representatives, were negligent in at least the following particulars:

    a.   failing to properly inspect the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b.   failing to properly or timely maintain the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their operation:

    c.   failing to dispatch and operate the aircraft in such manner as to provide safe and adequate transportation to the

passengers, including failure to avoid known adverse flying conditions;

      d.    failing to adequately or properly train their employees and/or their agents regarding proper inspection, maintenance, dispatch and operation of the aircraft;

      e.    failing to comply with applicable Federal Aviation Regulations related to the training of airmen, inspection and maintenance of aircraft and the dispatch and operation of aircraft.

      f.    failing to properly and adequately warn the passengers on Flight 901 of the known and dangerous conditions of said aircraft.

26.  TACA, AVIATECA and ACC and/or the "ACC Joint Venture," should have known that the aforesaid acts or omissions were likely to result in injuries or death to passengers aboard the subject aircraft.

27.  The above-described conduct was a legal cause of the aircraft crash, the death of Jose Rosell Martinez and the damages claimed herein.

### COUNT II

### NEGLIGENCE AND VICARIOUS LIABILITY AGAINST CIT AND ILFC

Plaintiff adopts and realleges every allegation contained in paragraphs 1 through 27 and further alleges:

28. At all times material, CIT leased the aircraft to TACA, AVIATECA, and ACC and/or the "ACC Joint Venture," through an assignment to ILFC.

29. CIT and ILFC, by and through its agents, employees and representatives, were negligent in at least the following particulars:

    a. failing to properly inspect or monitor, oversee or supervise the inspection and maintenance of the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b. failing to operate or monitor, oversee or supervise the operation of the aircraft in such a manner as to provide safe and adequate transportation to the passengers, including failure to avoid known adverse flying conditions due to inadequate radar capabilities; and

    c. failing to adequately or properly train or monitor, oversee or supervise the training of employees and/or agents regarding proper inspection, maintenance and operation of the aircraft.

30. At all times material hereto, CIT and ILFC, by and through its agents, employees and representatives, knew or should have known that the aforesaid acts or omissions were likely to

result in injuries or death to passengers aboard the subject aircraft.

31. As lessor of the aircraft, a dangerous instrumentality, CIT and ILFC are vicariously liable for the negligent acts and omissions of its lessee, TACA, AVIATECA and ACC and/or the ACC Joint Venture.

32. The above-described conduct was a legal cause of the aircraft crash, the death of Jose Rosell Martinez and the damages claimed herein.

## COUNT III

### WILLFUL MISCONDUCT AGAINST TACA, AVIATECA, ACC AND THE ACC JOINT VENTURE

Plaintiff adopts and realleges every allegation contained in paragraphs 1 through 32 and further alleges:

33. TACA, AVIATECA, ACC and the "ACC Joint Venture" owed a duty of the highest degree of care to the passengers on board Flight 901 and Jose Rosell Martinez, deceased.

34. The acts and omissions of TACA, AVIATECA and ACC and/or the "ACC Joint Venture" constituted willful, wanton, reckless and/or grossly negligent misconduct and were conducted with a reckless indifference to the safety of Jose Rosell Martinez, deceased, in at least the following particulars:

    a. knowingly failing to properly inspect, or ensure others inspected in Florida and elsewhere, the aircraft and its

system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

      b.   knowingly failing to properly or timely maintain, or ensure others maintained in Florida and elsewhere, the aircraft and its systems, including but not limited to the aircraft navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

      c.   knowingly failing to dispatch and operate, or ensure others dispatched and operated, the aircraft in such a manner as to provide safe and adequate transportation to the passengers, including failing to avoid known adverse flying conditions due to inadequate radar capabilities; and

      d.   knowingly failing to adequately or properly train, or ensure others trained in Florida and elsewhere, the flight crew employees regarding proper inspection, maintenance and operation of the aircraft.

      e.   knowingly and intentionally, because of the corporate setup and the international operation, violated applicable Federal Aviation Regulations related to training of airmen, inspection and maintenance of aircraft and the dispatch and operation of aircraft.

    35.   The above-described conduct was a legal cause of the

aircraft crash, the death of Jose Rosell Martinez, deceased and the damages claimed herein.

36. By reasons of the above-stated acts of intentional, wanton and willful, reckless and/or grossly negligent conduct the Defendants are liable for punitive damages, without limitation.

### COUNT IV

### WILLFUL MISCONDUCT, PUNITIVE DAMAGES AND VICARIOUS LIABILITY AGAINST CIT AND ILFC

Plaintiff adopts and realleges every allegation contained in paragraphs 1 through 36 and further alleges:

37. CIT leased the aircraft to TACA, AVIATECA and ACC and/or the "ACC Joint Venture," through an assignment from ILFC.

38. The acts, errors or omissions of CIT and ILFC constituted intentional, willful and wanton misconduct and were conducted with a reckless indifference to the safety of Jose Rosell Martinez, deceased, in at least the following particulars:

    a. knowingly failing to properly inspect or monitor, oversee or supervise the inspection of the aircraft and its system, including but not limited to the aircraft's navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    b. knowingly failing to properly or timely maintain or monitor, oversee or supervise the maintenance of the aircraft and its systems, including but not limited to the aircraft's

navigation and radar systems, wing surfaces, and other structural components, to ensure their proper operation;

    c.   knowingly failing to operate or monitor, oversee or supervise the operation of the aircraft in such a manner as to provide safe and adequate transportation to the passengers, including failure to avoid known adverse flying conditions due to inadequate radar capabilities; and

    d.   knowingly failing to adequately or properly train or monitor, oversee or supervise the training of employees and/or agents regarding proper inspection, maintenance and operation of the aircraft.

39. As lessor of the aircraft, a dangerous instrumentality, CIT and ILFC are vicariously liable for the negligent acts and omissions and for the punitive damages of its lessee, AVIATECA, in causing the crash of Flight 901.

40. The above-described conduct was a legal cause of the aircraft crash, the death of Jose Rosell Martinez, deceases and the damages alleged herein.

## COUNT V

### CAUSE OF ACTION FOR WILLFUL MISCONDUCT UNDER THE WARSAW CONVENTION

41. The allegations of Count III & IV are incorporated herein by reference.

42. At all times material, the Defendants TACA, AVIATECA,

ACC and the "ACC Joint Venture," were individually, or as the joint venture, were an airline with its ordinary residence and/or principal place of business in Miami, Florida or the United States of America.

43. The Defendants TACA, AVIATECA, ACC and the ACC Joint Venture were operating Flight 901 in international transportation as defined by the Warsaw Convention, 49 U.S.C. § 1502, *et seq.*

44. The crash and the conduct herein described leading up to the crash constituted an "accident" within the meaning of that term in the Warsaw Convention.

45. The acts and omissions of the airline that caused the crash were willful and wanton misconduct, such that the limitations of liability of the Warsaw Convention do not apply herein.

## COUNT VI

### DAMAGES

46. Plaintiff seeks recovery of all damages available to her under all applicable laws as representative of the above-named Estate, for the Estate and for all survivors and/or beneficiaries. These damages include but are not limited to:

    a. pain and suffering and mental anguish of the decedent prior to his death and for his pre-impact fear of death;

    b. loss of society, companionship, guidance and

services of the decedent to the survivors, beneficiaries and heirs;

 c. loss of support and services in money or in kind;

 d. loss of net accumulations;

 e. funeral expenses;

 f. full value of life of the decedent for his wrongful death;

 g. punitive exemplary damages; and

 h. any other damages to which Plaintiff, the survivors and/or the beneficiaries may be entitled under applicable law.

WHEREFORE, Plaintiff demands judgment against the Defendant for compensatory and punitive damages, as well as interest and costs.

Plaintiff further demands a trial by jury.

DATED 21st day of August, 1996.

       Respectfully submitted:

       George J. Fowler, III, Esquire
       Samuel A. Giberga, Esquire
       RICE FOWLER
       Place St. Charles, 36th Floor
       201 St. Charles Avenue
       New Orleans, Louisiana 70112
       Telephone: (504) 523-2600

       Tony Jobe, Esquire
       225 Baronne Street, Suite 904
       New Orleans, Louisiana 70112
       Telephone: (504) 524-9700

CURTIS & CURTIS, P.A.
Post Office Box 21607
Fort Lauderdale, Florida 33335
Telephone:  (954) 525-6652
Facsimile:  (954) 525-6656

By _____
Edward R. Curtis
Florida Bar No. 236845

6980038.com